2002-NMCA-014

40 P.3d 442

The BANK OF SANTA FE, a New Mexico banking corporation, Trustee of the Walter L. Goodwin, Jr. Trust in the name of Ban San Co., a partnership nominee, Plaintiff–Appellant,

v.

MARCY PLAZA ASSOCIATES; a New Mexico general partnership, Defendant–Appellee.

No. 21,389.

Court of Appeals of New Mexico.

Dec. 14, 2001.

Certiorari Denied, No. 27,289, Jan. 28, 2002.

Steven L. Tucker, Tucker Law Firm, P.C., Santa Fe, NM, for Appellant.

John M. Eaves, Derek V. Larson, Eaves, Bardacke, Baugh, Kierst & Kiernan, P.A., Albuquerque, NM, for Appellee.

## OPINION

CASTILLO, Judge.

{1} This case requires us to determine whether, under principles of res judicata, Marcy Plaza Associates' (Marcy Plaza) claim

that it overpaid rent is barred by a prior arbitration between the parties. Marcy Plaza is the lessee of property in Santa Fe, on which it operates a retail and office complex. The Bank of Santa Fe (Bank) is the lessor. Under the lease, Marcy Plaza's lease payments are calculated based on its "net profit." In July 1996 the parties arbitrated Marcy Plaza's claim that refinancing costs are deductible costs in determining "net profit" (1996 arbitration).

{2} In October 1996 three months after the 1996 arbitration, Marcy Plaza informed the Bank of its claim that it had overpaid rent by mistakenly including expenses that were passed through to tenants, such as utilities. In September 1997 Marcy Plaza notified the Bank that it intended to seek another arbitration. The Bank brought this declaratory judgment action alleging that Marcy Plaza's overpayment claim was barred by res judicata because Marcy Plaza did not raise it in the 1996 arbitration between the parties. After trial, the district court ruled that Marcy Plaza's claim that it overpaid rent was a different claim, not decided in the 1996 arbitration, and it was not barred by res judicata. We affirm.

### BACKGROUND

{3} The retail and office complex is partially on real estate owned by the Walter Goodwin Trust; the Bank is trustee. As trustee, the Bank entered into two ground leases, one in 1982 and one in 1984. Marcy Plaza now holds the leases. For purposes of this opinion the two leases, which are similar in all material respects, are referred to as "the lease."

{4} The lease provides for base rent, and contains two provisions for increasing the rent over time. The first increase began in year six of the lease:

Beginning with the sixth year of the lease term, the base rent shall be increased by an amount equal to ten percent (10%) of the amount, if any, by which Lessee's gross rental income from all property covered by the lease on the commencement of the year of the term exceeds Lessee's gross rental income from all property covered by the lease on the base date.

{5} The lease also provides for a second increase to occur with the thirteenth year of the lease. It was to equal twenty-five percent of the net profit received by Marcy Plaza as rent from the leased property. Paragraph 4B of the lease defines "net profit," and provides for arbitration by accountants in case of a dispute over net profits:

Net profit means the gross amount received as rent by Lessee, less all bona fide costs, expenses and payments related to operation, management, maintenance, financing, depreciation, assessments and real and personal property taxes.... Any dispute as to net profit shall be resolved by the parties each choosing an accountant, and the two so chosen choosing a third accountant, in the same manner as hereinafter set forth for the selection of arbitrators or appraisers pursuant to the procedures for arbitration....

{6} In addition to the specific arbitration provision for any dispute as to net profit, the lease also contains a general arbitration provision:

Any controversy which shall arise between Lessor and Lessee, ... shall be settled by arbitration. Such arbitration shall be before one disinterested arbitrator if one can be agreed upon, otherwise before three (3) disinterested arbitrators, one named by Lessor, one by Lessee, and one by the two (2) thus chosen.

{7} In 1990, the sixth year of the lease, Marcy Plaza's first supplemental rent payment became due. To calculate the supplemental rent payment, Marcy Plaza had to calculate its "gross rental income." Marcy Plaza did so and beginning in 1990 submitted checks to the Bank.

{8} In April 1996 Marcy Plaza notified Bank about a proposed refinancing of the Industrial Revenue Bond debt which would increase the indebtedness against the property from approximately $3,300,000 to $4,500,000. In May 1996 the Bank requested arbitration on three issues, including "[w]hether or not the financing cost, including interest on the new loan, are deductible as an expense for calculation of rentals based upon net profits." The two other issues were settled, but the net profit issue went to arbi-

tration before three accountants in July 1996. Ultimately, the panel of accountants decided this issue in favor of Marcy Plaza, ruling that costs associated with the refinancing were a deductible expense in calculating net profits.

{9} In October 1996 and again in September 1997, Marcy Plaza notified the Bank that Marcy Plaza believed it had overpaid rent since 1990. The notification letter in 1997 informed the Bank that Marcy Plaza intended to seek another arbitration. According to Marcy Plaza, the overpayments occurred because it had mistakenly calculated gross rental income to include pass-through expenses such as utilities and other expenses paid by its tenants. The overpayments totaled approximately $34,000 and, at trial, Marcy Plaza admitted the mistake was caused by its own carelessness. In November 1997 the Bank filed this declaratory judgment action seeking to establish that Marcy Plaza was barred by res judicata from pursuing any overpayments. The Bank also alleged that Marcy Plaza was barred from pursuing a claim about payment of costs and expenses associated with the 1996 arbitration. In December 1997 Marcy Plaza sent the Bank a formal demand for arbitration.

{10} After a bench trial, the district court ruled in favor of Marcy Plaza on the overpayment issue. The district court found that the cause of action determined in the 1996 arbitration was different from the cause of action now asserted by Marcy Plaza: "[t]he concept of 'gross rental income' was only tangential to the net profit issue presented at the July 19, 1996 Arbitration," and "[t]he calculation of 'gross rental income' was not [before] the July 19, 1996 Arbitration." The district court dismissed the Bank's complaint insofar as it requested that Marcy Plaza's overpayment claim was res judicata. Rule 1–041(B) NMRA 2001.

{11} The district court ruled in favor of the Bank regarding payment of costs and expenses related to the 1996 arbitration; the issue was not appealed and is not before us.

**STANDARD OF REVIEW**

{12} We review this issue as a mixed question of law and fact. The facts are reviewed to see if they are supported by substantial evidence, but the legal conclu-

sions flowing from those facts are reviewed de novo. *State v. Attaway*, 117 N.M. 141, 144–46, 870 P.2d 103, 106–08 (1994); *Anaya v. City of Albuquerque*, 1996–NMCA–092, ¶ 5, 122 N.M. 326, 924 P.2d 735; *Wolford v. Lasater*, 1999–NMCA–024, ¶ 4, 126 N.M. 614, 973 P.2d 866 (applying claim preclusion by court reviewed de novo).

**DISCUSSION**

{13} Claim preclusion, or res judicata, precludes a subsequent action involving the same claim or cause of action. *Wolford*, 1999–NMCA–024, ¶ 5, 126 N.M. 614, 973 P.2d 866. It applies where there is "(1) identity of parties or privies, (2) identity of capacity or character of persons for or against whom the claim is made, (3)[the] same cause of action, and (4)[the] same subject matter." *City of Las Vegas v. Oman*, 110 N.M. 425, 432, 796 P.2d 1121, 1128 (Ct.App.1990) (quoting *Three Rivers Land Co. v. Maddoux*, 98 N.M. 690, 694, 652 P.2d 240, 244 (1982), *overruled on other grounds by, Universal Life Church v. Coxon*, 105 N.M. 57, 58, 728 P.2d 467, 469 (1986)).

{14} Res judicata precludes a claim when there has been a full and fair opportunity to litigate issues arising out of that claim. *Myers v. Olson*, 100 N.M. 745, 747, 676 P.2d 822, 824 (1984). Res judicata bars not only claims that were raised in the prior proceeding, but also claims that could have been raised. *State ex rel. Martinez v. Kerr-McGee Corp.*, 120 N.M. 118, 121, 898 P.2d 1256, 1259 (Ct.App.1995). This principle ensures finality, advances judicial economy, and avoids piecemeal litigation. *First State Bank v. Muzio*, 100 N.M. 98, 101, 666 P.2d 777, 780 (1983), *overruled on other grounds by, Huntington Nat. Bank v. Sproul*, 116 N.M. 254, 263, 861 P.2d 935, 944 (1993); *Myers*, 100 N.M. at 747, 676 P.2d at 824. If the causes of action are different, res judicata is inapplicable. *DiMatteo v. County of Dona Ana*, 109 N.M. 374, 380, 785 P.2d 285, 291 (Ct.App. 1989). The Bank, as the party seeking to bar Marcy Plaza's claims, has the burden of establishing res judicata. *Anaya*, 1996–NMCA–092, ¶ 5, 122 N.M. 326, 924 P.2d 735.

{15} The parties disagree on whether res judicata applies to arbitration awards. Although we recognize that collateral estoppel generally applies to arbitration awards, *Rex, Inc. v. Manufactured Hous. Comm. of N.M.*, 119 N.M. 500, 505, 892 P.2d 947, 952 (1995) we need not decide whether res judicata should apply to arbitration awards. Assuming, but not deciding, that res judicata would apply to an arbitration award, we hold that the requisites necessary to prove res judicata are not present in this case.

## A. Comparison of Claims

{16} In this case, we have the same parties, so the dispositive factors are whether the overpayment claim involves the same cause of action and the same subject matter as that decided at the 1996 arbitration. *City of Las Vegas*, 110 N.M. at 432, 796 P.2d at 1128. *Anaya* requires us to determine whether the facts underlying the first and subsequent claim are "so interwoven as to constitute a single claim for purposes of res judicata." *Anaya*, 1996–NMCA–092, ¶ 11, 122 N.M. 326, 924 P.2d 735. In making this determination, we look at three factors: "(1) the relatedness of the facts in time, space, origin, or motivation; (2) whether, taken together, the facts form a convenient unit for trial purposes; and (3) whether the treatment of the facts as a single unit conforms to the parties' expectations or business understanding or usage." *Id.* ¶ 12; *see also Three Rivers Land Co.*, 98 N.M. at 695, 652 P.2d at 245 (discussing that res judicata is not determined by a mechanical test but by a process made up of well-established rules), *overruled on other grounds by Universal Life Church v. Coxon*, 105 N.M. at 58, 728 P.2d at 469.

### 1. Relatedness of Facts

{17} The 1996 arbitration addressed only whether financing expenses were deductible as costs in determining "net profit." The claim Marcy Plaza now seeks to arbitrate is whether pass-through expenses, such as utilities, are included or excluded in determining "gross rental income." The Bank argues that the calculation of net profits requires a calculation of gross rental income;

therefore, "the issue in the second proceeding was necessarily included in the [1996 arbitration]." We agree with the district court that these are different claims. Granted, gross rental income is a calculation in determining net profit, but it was not necessary to calculate gross rental income to decide whether financing expenses should be deducted in determining net profit. The 1996 arbitration focused on a narrow issue concerning "net profit" and whether costs associated with financing expenses were deductible. It did not focus on how pass-through expenses were to be treated in calculating "gross rental income," or on overpayments.

{18} The Bank argues that the claims arise from a "common nucleus of operative facts." We disagree. The facts underlying the two claims are different in time and origin. They are interrelated only because they both fall under the general category of a dispute concerning rental payments under the lease, but the claims involve different calculations and arose at different times. The "net profit" issue considered at the 1996 arbitration was based on an isolated refinancing arrangement in 1996. In contrast, the overpayment issue is an ongoing issue that spans from 1990 into future decades. *See Albuquerque Broad. Co. v. Bureau of Revenue*, 54 N.M. 165, 168, 216 P.2d 698, 700 (1950) (recovering taxes for a different period of time not barred by res judicata). Here, because Marcy Plaza's overpayment claim is based on different facts, res judicata is inapplicable. *See Silva v. State*, 106 N.M. 472, 474, 745 P.2d 380, 382 (1987) ("Where the ultimate facts necessary for the resolution of two suits are different, … res judicata is inapplicable."); *Runge v. Fox*, 110 N.M. 447, 450, 796 P.2d 1143, 1146 (Ct.App.1990) (stating that prior action involving past due rent and restitution of premises did not bar suit alleging that defendant was liable with respect to the manner of executing the writ of restitution).

### 2. Convenient Trial Unit

{19} The second factor, whether the facts form a convenient unit for trial, also calls for a conclusion that res judicata does

not apply. Under the terms of the lease, "[a]ny dispute as to net profit" was to be decided by a panel of accountant arbitrators. The district court found that the panel of accountants could only consider issues related to net profits, and they would have no authority to consider the overpayment issue now raised under gross rental income.

{20} The Bank argues that the district court's finding is mistaken, and that because the concept of gross rental income "is an essential part of the [net profit] calculation," the accountant arbitrators had the authority to consider the overpayment issue. We disagree. The lease specifically provides that "[a]ny dispute as to net profit" was to be arbitrated by accountant arbitrators. This provision is unambiguous, and we interpret it as written. *See Christmas v. Cimarron Realty Co.*, 98 N.M. 330, 332, 648 P.2d 788, 790 (1982) (stating that when arbitration agreement is unambiguous, courts will apply its plain meaning). We disagree with the Bank that, under the plain language of the arbitration provision, the 1996 arbitration before a panel of accountants could be expanded to include the overpayment claim. Consequently, res judicata would not apply. *Martinez*, 120 N.M. at 122, 898 P.2d at 1260 ("Claims are not precluded ... where a plaintiff could not seek a certain relief or rely on a certain theory in the first action due to limitations on the subject matter jurisdiction of the first tribunal."). The two claims cannot be a "convenient trial unit" when they could not both be presented at the 1996 arbitration. We therefore disagree with the Bank's argument.

### 3. Parties' Expectations

{21} The third factor, the parties' expectations, also calls for a conclusion that res judicata does not apply. It would be unreasonable for the Bank to assume that, having addressed the narrow issue of whether finance expenses are deductible in determining "net profit," it would never have to arbitrate any dispute concerning rental payments ever again. *See Anaya*, 1996–NMCA–092, ¶ 17, 122 N.M. 326, 924 P.2d 735(considering reasonableness of party's expectation in finality).

{22} Under the third factor, *Anaya* instructs us that we also consider whether the policy of finality outweighs Marcy Plaza's interest in vindication of its claims. *Id.* ("Nor can we say that the courts' and Defendants' interests in bringing litigation to a close outweigh Plaintiff's interest in the vindication of his claims."). The consequences of barring Marcy Plaza's claim are significant. The lease may be extended until the year 2037. If Marcy Plaza has no avenue for addressing the overpayments, it cannot attempt to recover existing alleged overpayments of $34,000, and it may be required to make overpayments for decades into the future. On this record, any interest the district court and the Bank may have in finality does not outweigh Marcy Plaza's interest in vindicating its claims. *Id.*

{23} Applying all of the *Anaya* factors, we hold that the overpayment claim is a different claim from the claim that was the subject of the 1996 arbitration; consequently, the claim is not barred by res judicata. *DiMatteo*, 109 N.M. at 380, 785 P.2d at 291 (holding that res judicata does not apply when causes of action are different).

### B. Other Res Judicata Considerations

{24} The Bank argues that Marcy Plaza should have known of its overpayment claim and is barred from raising it because it could have been raised during the prior proceeding. We disagree. Where, as here, the new claim is different from the claim presented at the 1996 arbitration, Marcy Plaza may bring it now. *See Anaya*, 1996–NMCA–092, ¶ 18, 122 N.M. 326, 924 P.2d 735 (noting that res judicata applies to claims that could have been raised in the first proceeding is inapplicable when the claims are different).

{25} Moreover, the evidence does not establish that Marcy Plaza knew of the overpayment claim before the 1996 arbitration. The Bank cites to evidence it suggests indicates that Marcy Plaza knew of the overpayment claim before the 1996 arbitration, but our review of the evidence relied on by the Bank does not definitively establish that fact. Asked when he learned of the problem, Arnold Horowitz, one of the principals in Marcy Plaza, stated, "At some time during the pro-

ceedings for the arbitration." It is unclear from this testimony, and the Bank never established a definite date when Marcy Plaza became aware of the overpayments. The record establishes with certainty only that by October 1996, several months after the arbitration, Marcy Plaza was aware of the problem. Other citations to the evidence by the Bank simply establish that the overpayment issue was not raised at the 1996 arbitration, not that Marcy Plaza knew of the overpayment problem before the arbitration. The record does not establish that Marcy Plaza was aware of the overpayment claim before the July 1996 arbitration, and we reject the Bank's argument that the overpayment claim is barred because it could have been brought in July 1996. *Sanders v. Estate of Sanders,* 122 N.M. 468, 473, 927 P.2d 23, 28 (Ct.App. 1996) (stating that wife was bound by amended divorce decree's resolution of mineral, oil and gas interests when she signed the decree knowing that she had a potential claim but signed the decree anyway; consequently, the matter was res judicata). We agree with the district court that the Bank did not meet its burden to establish res judicata. *See Anaya,* 1996–NMCA–092, ¶ 5, 122 N.M. 326, 924 P.2d 735.

{26} The Bank also argues that res judicata should apply because Marcy Plaza had a full and fair opportunity to litigate its overpayment claim at the July 1996 arbitration. The Bank is correct that res judicata is applicable where a party has had a full and fair opportunity to present its claim. *City of Las Vegas,* 110 N.M. at 432, 796 P.2d at 1128 (noting that the parties must have had a full and fair opportunity to litigate the issue before claim preclusion applies); *Myers,* 100 N.M. at 747, 676 P.2d at 824. However, we disagree that Marcy Plaza had a full and fair opportunity to present its overpayment claim in July 1996. As we have discussed previously, under the terms of the lease, the panel of accountant arbitrators convened in the 1996 arbitration only had the authority to consider disputes concerning "net profits." Therefore, we disagree that Marcy Plaza had a full and fair opportunity to present its overpayment claim then. *Martinez,* 120 N.M. at 122, 898 P.2d at 1260 (showing that claims are not precluded when a party could

not seek a certain relief in the first action due to limitations on the subject matter jurisdiction of the first tribunal). As we have also discussed, the Bank failed to introduce sufficient proof showing that Marcy Plaza was aware of the overpayment claim prior to the July 1996 arbitration. *Myers,* 100 N.M. at 748, 676 P.2d at 825 (applying res judicata where husband had the advice of counsel and the opportunity to raise any issue concerning the division of property before he entered into the stipulated final divorce decree). For these reasons, we reject the Bank's argument that Marcy Plaza had a full and fair opportunity to raise its overpayment claim in the 1996 arbitration.

{27} Finally, the Bank argues that all breaches of a lease should be brought at the same time. While that may be true as a general proposition, we find it inapplicable here, because the Bank did not establish that the second "breach" was discovered before the 1996 arbitration and more importantly because the overpayment claim involves different facts and a different claim.

## CONCLUSION

{28} We need not and do not decide whether Defendant's claim for overpayments is meritorious. We decide only that it is not barred by res judicata and may be presented for arbitration. Nothing in this opinion is intended to express our view on whether Marcy Plaza should prevail on the merits of its overpayment claim, nor should this opinion be used to attempt to influence the arbitrators.

{29} The decision of the district court is affirmed.

{30} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID, Judge, and IRA ROBINSON, Judge.