2006-NMCA-025

128 P.3d 1076

**BROOKS TRUCKING CO., INC., Plaintiff–Appellant,**

v.

**BULL ROGERS, INC., Defendant–Appellee.**

No. 24,684.

Court of Appeals of New Mexico.

Jan. 13, 2006.

Martin Law Firm, W.T. Martin, Jr., Carlsbad, NM, for Appellant.

Maddox & Holloman, PC, Lee A. Kirksey, Hobbs, NM, for Appellee.

## OPINION

SUTIN, Judge.

{1} This appeal centers on whether this lawsuit by Brooks Trucking Co., Inc. against Bull Rogers, Inc. is barred by the doctrine of res judicata. We conclude that it is not. This lawsuit involves claims and transactions distinct and separate from the prior lawsuits in question. Important to our analysis of transactions is an issue of first impression in New Mexico. That issue involves the extent, if any, res judicata should apply where the claims asserted in the later lawsuit are based on operative facts that were not in existence at the time the earlier lawsuit was filed. We hold that res judicata does not apply to such claims.

## BACKGROUND

### BEN BROOKS' LAWSUIT

{2} In 1994, Bull Rogers, an oilfield service company, used Brooks Trucking to remove old fuel tanks in an environmental cleanup project. Bull Rogers' clean-up cost was to be reimbursed by the New Mexico Environment Department. In December 1997, the President of Brooks Trucking, Ben Brooks, in his own behalf, filed an action in breach of contract against Bull Rogers, alleging that he was an employee of Bull Rogers and was entitled to unpaid wages from 1994. At trial in November 1998, Mr. Brooks offered an assignment, created at the time of trial, by which Brooks Trucking attempted to assign all of its claims against Bull Rogers to Mr. Brooks personally. The district court did not allow the assignment and ruled in favor of Bull Rogers. The court held that Bull Rogers did not enter into any contract, either written or oral, to employ Mr. Brooks individually, and that Mr. Brooks had never been on Bull Rogers' payroll. The court further held that Mr. Brooks could not assert claims on behalf of Brooks Trucking. The court dismissed Mr. Brooks' lawsuit with prejudice in February 1999. Mr. Brooks did not appeal. We refer to this lawsuit as Mr. Brooks' lawsuit to distinguish it from the following two lawsuits filed by Brooks Trucking.

### BROOKS TRUCKING'S TWO LAWSUITS

{3} In November 1998, after knowing Mr. Brooks' lawsuit would be dismissed, and be-

fore entry of the order of dismissal of Mr. Brooks' lawsuit, Brooks Trucking filed a complaint against Bull Rogers for debt on a contract pursuant to which Brooks Trucking leased equipment and performed labor during 1993 and 1994. We refer to this lawsuit as Brooks Trucking's "first lawsuit." In its complaint, Brooks Trucking contended that Bull Rogers owed money to Brooks Trucking and sought judgment in the amount owed. Brooks Trucking failed to serve the complaint on Bull Rogers for some sixteen months, during which period of time the statute of limitations on Brooks Trucking's claim expired, and in May 2002 the district court granted Bull Rogers' motion to dismiss the action. In its dismissal order, the court characterized the action as one on open account, and the dismissal was based on the running of the applicable four-year statute of limitations and was also based on Brooks Trucking's failure to diligently serve the complaint. Brooks Trucking did not appeal the dismissal of its first lawsuit.

{4} In December 2002, Brooks Trucking filed another lawsuit against Bull Rogers, asserting claims of fraud, conversion, and damages. Bull Rogers filed a motion to dismiss in February 2003, on res judicata grounds, to which Brooks Trucking filed a response and amended complaint in April 2003. Brooks Trucking's amended complaint added claims for unjust enrichment and breach of contract. The thrust of Brooks Trucking's response to the motion to dismiss and the thrust of its amended complaint was that in 1999 or 2000 Bull Rogers received and wrongfully retained money paid to it by the State of New Mexico which it should have paid to Brooks Trucking. Brooks Trucking claimed that it was contractually entitled to payment directly from the State of funds that Bull Rogers retained and did not transfer to Brooks Trucking as assignee. The contractual documents on which Brooks Trucking relied for its claims were (1) an assignment by Bull Rogers to Brooks Trucking, as payee, in May 1994 of payments to be made by the State covering Brooks Trucking's leasing and work and (2) a settlement agreement between the State and Bull Rogers in February 1996 relating to the payment of funds and also relating to Bull Rogers'

assigns. After a hearing on Bull Rogers' motion to dismiss, the district court dismissed this lawsuit with prejudice. The dismissal of this second lawsuit is currently before us on appeal. We refer to this current lawsuit as Brooks Trucking's "second lawsuit."

{5} More particularly, Brooks Trucking's amended complaint in its second lawsuit alleged what is set out in the remainder of this paragraph. In 1993 and 1994 Bull Rogers contracted with and incurred an obligation to the State of New Mexico for environmental cleanup. Bull Rogers also contracted with Brooks Trucking to provide services for the cleanup. In May 1994, together with a request for reimbursement from the State for work done by Brooks Trucking, Bull Rogers submitted a printed claim form seeking reimbursement from the New Mexico Corrective Action Fund. On this form, Bull Rogers assigned to Brooks Trucking the reimbursement rights held by Bull Rogers. Bull Rogers and the State were in dispute as to the amount of reimbursement to which Bull Rogers was entitled, and the New Mexico Environment Department sued Bull Rogers for fraud, unfair trade practice, and debt and money due, following which Bull Rogers counterclaimed. In February 1996, those parties settled their dispute by entering into a written settlement agreement. This settlement agreement dealt with the method and terms of reimbursement to Bull Rogers, and did not revoke Bull Rogers' prior assignment to Brooks Trucking. The agreement expressly stated that it was binding upon Bull Rogers and its assigns. In 1999, in conformity with the settlement agreement, Bull Rogers received reimbursement for work done by Brooks Trucking. At the hearing on the motion to dismiss, Brooks Trucking clarified that the payment from the State to Bull Rogers was in "late 1999, or 2000." The settlement agreement was a new contract and constituted a novation or an entirely new agreement as to which Brooks Trucking was a beneficiary in the form of an assignee. Bull Rogers retained the funds it received from the State and did not pay any funds to Brooks Trucking.

{6} In granting Bull Rogers' motion to dismiss Brooks Trucking's second lawsuit, the district court stated that it had reviewed and considered the pleadings filed in Mr. Brooks' lawsuit and in Brooks Trucking's first lawsuit. Stating only that Bull Rogers' motion to dismiss was "well taken," the court dismissed Brooks Trucking's original and amended complaints in its second lawsuit with prejudice. In light of its ruling that the suit was barred, the district court also denied a motion Brooks Trucking had filed to amend the complaint to add a party. Brooks Trucking appealed. On appeal, Brooks Trucking asserts that the district court erred in granting Bull Rogers' motion to dismiss because res judicata was not applicable to its second lawsuit. Brooks Trucking also asserts that it should be given the opportunity to amend the complaint.

{7} We first discuss the doctrine of res judicata and then provide our analysis of why the current lawsuit, Brooks Trucking's second lawsuit, is not barred under res judicata. While this over-ten-year saga sorely needs to end, we do not see res judicata as the stopping point. Brooks Trucking's second lawsuit claims are different than its prior claim on open account and the claims are based on facts distinct enough from those underlying the open account claim in the first lawsuit to conclude that the transactions underlying the two lawsuits are different.

## STANDARD OF REVIEW

■ {8} Because the parties and the district court relied on pleadings and documents filed in Mr. Brooks' action and in Brooks Trucking's first lawsuit in granting Bull Rogers' motion to dismiss in Brooks Trucking's second lawsuit, we will view the court's dismissal as a summary judgment in Bull Rogers' favor. Rules 1–012(B), 1–056 NMRA. The facts upon which the court entered summary judgment are undisputed. Our review is de novo because the issues are issues of law. *Moffat v. Branch*, 2005–NMCA–103, ¶ 10, 138 N.M. 224, 118 P.3d 732, *cert. granted*, 2005–NMCERT–008, 138 N.M. 329, 119 P.3d 1266.

## RES JUDICATA

{9} We agree with the parties that the governing law is the doctrine of res judicata.

We look to the elements constituting the doctrine and the policy underlying it.

■ {10} The elements of res judicata or claim preclusion required as to the two actions at issue are (1) the same parties or parties in privity, (2) the identity of capacity or character of persons for or against whom the claim is made, (3) the same subject matter, and (4) the same cause of action. *Moffat*, 2005–NMCA–103, ¶ 11, 138 N.M. 224, 118 P.3d 732; *Anaya v. City of Albuquerque*, 1996–NMCA–092, ¶ 6, 122 N.M. 326, 924 P.2d 735. In regard to the subject matter and cause of action, res judicata "does not depend upon whether the claims arising out of the same transaction were actually asserted in the original action, as long as they could have been asserted." *Id.* ¶ 18 (internal quotation marks and citation omitted). However, that a claim could have been asserted in the first lawsuit does not require invocation of res judicata where the two lawsuits do not arise out of the same transaction. *Id.* We are guided by *Restatement (Second) of Judgments* § 24(2) (1982), in res judicata transaction analysis. *Anaya*, 1996–NMCA–092, ¶¶ 7, 12, 122 N.M. 326, 924 P.2d 735. Under Section 24(2), we consider "(1) the relatedness of the facts in time, space, origin, or motivation; (2) whether, taken together, the facts form a convenient unit for trial purposes; and (3) whether the treatment of the facts as a single unit conforms to the parties' expectations or business understanding or usage." *Id.* ¶ 12.

■ {11} As for policy, a party's full and fair opportunity to litigate is the essence of res judicata. *Moffat v. Branch*, 2002–NMCA–067, ¶ 26, 132 N.M. 412, 49 P.3d 673; *Bank of Santa Fe v. Marcy Plaza Assocs.*, 2002–NMCA–014, ¶ 14, 131 N.M. 537, 40 P.3d 442 (stating that claim preclusion applies only when plaintiff has had a "full and fair" opportunity to litigate issues in a prior action and that limitations on subject matter jurisdiction in the first action may prevent such an opportunity). Res judicata "reflects the expectation that parties who are given the capacity to present their entire controversies shall in fact do so." *Apodaca v. AAA Gas*

*Co.*, 2003–NMCA–085, ¶ 81, 134 N.M. 77, 73 P.3d 215 (internal quotation marks and citation omitted). In considering the application of res judicata, we weigh whether "the courts' and Defendants' interests in bringing litigation to a close outweigh Plaintiff's interest in the vindication of his claims." *Anaya*, 1996–NMCA–092, ¶ 17, 122 N.M. 326, 924 P.2d 735. The party seeking to bar claims has the burden of establishing res judicata. *Bank of Santa Fe*, 2002–NMCA–014, ¶ 14, 131 N.M. 537, 40 P.3d 442; *cf. Padilla v. Intel Corp.*, 1998–NMCA–125, ¶ 9, 125 N.M. 698, 964 P.2d 862 (discussing burden of party asserting collateral estoppel to establish it).

## ANALYSIS OF THE LAWSUITS

{12} Bull Rogers argues that Mr. Brooks' lawsuit and Brooks Trucking's two lawsuits all arose out of the same set of facts and circumstances, seeking the same amounts of money for the same work. Bull Rogers therefore contends that Mr. Brooks' lawsuit and Brooks Trucking's first lawsuit provide a basis to apply res judicata to bar Brooks Trucking's second lawsuit. With respect to the applicability of Mr. Brooks' lawsuit, Bull Rogers states in its answer brief that Brooks Trucking conceded identity of capacity or character in regard to Mr. Brooks and Brooks Trucking. Although in its reply brief Brooks Trucking did not respond to this bare assertion, in its brief in chief Brooks Trucking footnoted a statement, carrying with it no argument or authority, that "there is no identity of parties between the first suit and the present suit." Neither party develops this identity issue with any facts or authority. We therefore see no need to include Mr. Brooks' lawsuit in our analysis and determinations. In addition, even were we to consider Mr. Brooks' lawsuit, our holding in this case would apply to that lawsuit for the same reason it applies to Brooks Trucking's first lawsuit.

{13} Turning to Brooks Trucking's two lawsuits, Brooks Trucking asserts that its claims in its second lawsuit are based on (1) a right assigned by Bull Rogers to funds to be paid at some future date by the State, (2) an agreement between Bull Rogers and the State constituting a novation and binding on Bull Rogers' assigns in regard to reimbursement sums to be paid at some future date by the State, and (3) Bull Rogers' intentional and tortious refusal to pay funds to Brooks Trucking that were assigned to Brooks Trucking when Bull Rogers received the reimbursement sums from the State. Brooks Trucking argues that the facts giving rise to the claims in its second lawsuit did not arise until late 1999 or early 2000, when the State paid Bull Rogers and Bull Rogers wrongfully retained the funds. Brooks Trucking further argues that these claims could not have been asserted in its first lawsuit given that the district court had ruled that the statute of limitations on the open account claim asserted in that action had expired as of January 5, 1999, during the pendency of the action, service of process had not been completed by January 5, 1999, and the court ultimately dismissed the first lawsuit for failure to serve process within a reasonable time after filing the action.

{14} In Bull Rogers' view, because the assignment and the settlement agreement were known to Brooks Trucking as early as Mr. Brooks' lawsuit, having been exhibits or otherwise the subject of testimony in the trial in that action, and because no new investigation or discovery was done by Brooks Trucking after dismissal of its first lawsuit, the claims raised by Brooks Trucking in its second lawsuit could have been raised in the first one. Thus, Bull Rogers argues, when Brooks Trucking learned in late 1999 or early 2000 of the reimbursement payment from the State to Bull Rogers, there was sufficient time for Brooks Trucking to assert its claim in its first lawsuit which was pending at the time and not dismissed until May 2002.

{15} We are unpersuaded by Bull Rogers' arguments. First, the claims Brooks Trucking stated in its second lawsuit were not the same as the claim of open account in its first lawsuit. Second, underlying Brooks Trucking's different claims were different transactional relationships.

{16} With respect to the claims, Brooks Trucking's first lawsuit's open account claim was based on the underlying agreement to lease equipment and perform labor, and the actual leasing, labor, and incurrence of open

account liability. That underlying agreement, and the leasing, labor, and debt owed for it resulted in the documents later executed that created Brooks Trucking's right to receive payment from the State. Brooks Trucking's second lawsuit claims of fraud, conversion, unjust enrichment, and breach of contract encompass a right Brooks Trucking alleges as having been created by the later-executed documents, a separate contractual right independent of the right to be paid on open account. *See St. Joseph Healthcare Sys. v. Travelers Cos.*, 119 N.M. 603, 606, 893 P.2d 1007, 1010 (Ct.App.1995) ("[W]hen a plaintiff has made written assignment of particular funds from a third party to a creditor, the creditor has an enforceable legal right to the funds.").

{17} With respect to the transactional relationships, facts necessary for the resolution of the two lawsuits differ, and the factual and legal issues dispositive in the first lawsuit are different in significant degree from those in the second lawsuit. The proof in the first lawsuit required evidence of equipment leasing, labor performed, and the charges for those activities; the proof in the second lawsuit required evidence of the assignment and settlement agreement and the ultimate payment and retention of funds covered by those documents. Applied to the circumstances here, the guidelines in Section 24(2) of the *Restatement* do not support a single-transaction determination. The underlying debt for leasing and labor is substantially unrelated in time, origin, and motivation to the assignment and settlement agreement. Further, while the different claims in Brooks Trucking's first and second lawsuits could be tried in one lawsuit with all of the facts underlying those claims, the different facts are not so intertwined as to cause us to conclude that they would best be adjudicated in one lawsuit. Nor do we see that the treatment of the different facts as a single unit conforms to any expectation of the parties or business understanding or usage. *See Anaya*, 1996–NMCA–092, ¶ 18, 122 N.M. 326, 924 P.2d 735 (rejecting an argument that res judicata applied because the second action could have been brought in the first, where the two lawsuits did not arise out of the same transaction).

{18} In addition, although the documentary bases for Brooks Trucking's claims in the second lawsuit are grounded in the early known assignment and settlement agreement, Brooks Trucking did not assert a claim and, indeed, may not have successfully asserted or recovered on a claim based on those documents until the reimbursement payments were ultimately made to and wrongfully retained by Bull Rogers. Thus, the transactions become even more distinct because critical operative facts underlying the claims in Brooks Trucking's second lawsuit did not come into existence until after the first lawsuit was filed. For res judicata purposes, claims that arise from circumstances that come into existence after the first lawsuit is filed *may* be asserted by a supplemental pleading, but they are not required to be asserted in the first lawsuit. *See* Rule 1–015(D) NMRA; *Baker Group, L.C. v. Burlington N. & Santa Fe Ry.*, 228 F.3d 883, 886 (8th Cir.2000) (holding (1) claim preclusion does not apply to claims that did not arise until *after* the first suit was filed; and (2) because Fed.R.Civ.P. 15(d) is permissive for parties and discretionary with the court, the failure to supplement an already-commenced lawsuit did not raise a res judicata bar that precludes a second suit based upon a party's later conduct); *Fla. Power & Light Co. v. United States*, 198 F.3d 1358, 1360–61 (Fed.Cir.1999) (holding that under Fed.R.Civ.P. 15(d) as well as the different claims and underlying facts, the plaintiff's later asserted claims were "not barred by res judicata on the ground that the plaintiffs should have arranged to have them joined in the same action with their [earlier action]" (emphasis omitted)); *Doe v. Allied–Signal, Inc.*, 985 F.2d 908, 914–15 (7th Cir.1993) (holding if the plaintiff could not have learned of fraud and breach of contract before filing the first lawsuit, res judicata will not bar subsequent litigation, and that the *plaintiff is not required to amend the complaint* in the first lawsuit to include the issues that arose later).

{19} Even were the distinctions between the transactions somewhat less clear, we would not under the facts and claims in this case conclude that res judicata should bar

the second lawsuit. Wright and Miller's on-topic discussion indicates that the distinctions between transactions are often difficult to make, and that the better rule to follow is that the cause of action in the earlier proceeding "need include only the portions of the claim due at the time of commencing that action," and a supplemental or amended complaint as to claims that later ripen is not required to escape res judicata even if evidence of the underlying activity is used to prove the new claim. 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4409, at 210–52, esp. 213–20, 239–46 (2d ed.2002).

{20} Nothing in New Mexico law requires a different result. No New Mexico case holds that later-raised claims must be asserted in an earlier lawsuit where the operative facts underlying the newly asserted claims arose after the claims in the first action were brought. In our cases that apply res judicata, when later-raised claims could have been asserted in an earlier lawsuit, the operative facts underlying the newly asserted claims existed at the time the claims in the first action were brought. *See Moffat*, 2005–NMCA–103, ¶¶ 12–13, 138 N.M. 224, 118 P.3d 732 (concluding that the second action could have been brought in the first action where all facts necessary had occurred before the first suit was brought); *Apodaca*, 2003–NMCA–085, ¶¶ 76–85, 134 N.M. 77, 73 P.3d 215 (holding that res judicata barred a second claim where it could have been brought in the first case where both claims were brought based on the same transaction and all of the events underlying both suits happened before either suit was filed); *see also Bank of Santa Fe*, 2002–NMCA–014, ¶¶ 22, 24, 131 N.M. 537, 40 P.3d 442 (holding that claim for overpayment of rent was not the same claim as claim about refinancing cost as a part of rent and deciding that because it was unclear whether overpayment was known at the time of earlier arbitration that it could not have been brought at that time); *First State Bank v. Muzio*, 100 N.M. 98, 99, 101–02, 666 P.2d 777, 778, 780–81 (1983) (adopting and applying the rule that res judicata bars a subsequent action on issues that could have been brought in an earlier action); *overruled on other grounds by Huntington Nat'l Bank v. Sproul*, 116 N.M. 254, 861 P.2d 935 (1993).

**CONCLUSION**

{21} We reverse the district court's dismissal with prejudice and remand for further proceedings consistent with this opinion. In light of our reversal reinstating the lawsuit, the district court should revisit its ruling on Brooks Trucking's motion to amend.

{22} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and IRA ROBINSON, Judges.