# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: October 15, 2014

**NO. 32,119**

**DR. NATHAN E. BOYD ESTATE,**
**by JAMES SCOTT BOYD, Personal**
**Representative, and JAMES SCOTT**
**BOYD, Individually,**

  Plaintiffs-Appellants,

v.

**UNITED STATES, ELEPHANT BUTTE**
**IRRIGATION DISTRICT, and CITY**
**OF LAS CRUCES,**

  Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF DONA AÑA COUNTY**
James J. Wechsler, Presiding Judge

Robert S. Simon
Albuquerque, NM

for Appellants

Kenneth J. Gonzales, United States Attorney
Ruth Fuess Keegan, Assistant United States Attorney
Albuquerque, NM

Environment and Natural Resource Division,
U.S. Department of Justice
Ignacia S. Moreno, Assistant Attorney General
Matthew Littleton, Attorney Appellate Section
Washington, D.C.

for Appellee United States

Law Office of Steven L. Hernandez, P.C.
Steven L. Hernandez
Las Cruces, NM

for Appellee Elephant Butte Irrigation District

Stein & Brockmann, P.A.
Jay F. Stein
Seth R. Fullerton
Santa Fe, NM

City of Las Cruces
Harry "Pete" Connelly
Marcia Driggers
Las Cruces, NM

for Appellee City of Las Cruces

**OPINION**

**ZAMORA, Judge.**

{1}     James Scott Boyd, in his individual capacity, and as representative for the Estate of Dr. Nathan E. Boyd (Boyd) appeals from the district court's order dismissing his claims to water rights in the Lower Rio Grande adjudication area. Boyd was permitted to intervene in ongoing water rights adjudication proceedings in the district court. The district court dismissed Boyd's claims on the grounds that Boyd failed to assert a cognizable claim to water rights, and that Boyd's claims were barred by the principles of res judicata. We affirm.

**I.     BACKGROUND**

{2}     Boyd's claimed water rights stem from activities of his predecessor in interest, the Rio Grande Dam and Irrigation Company (the Company) over a century ago. In 1891, an Act of Congress (the 1891 Act) granted rights of way through public lands to irrigation companies. *See* Act of March 3, 1891, ch. 561, 26 Stat. 1101. The Company was formed in 1893 to build a network of dams, canals, and reservoirs for irrigation of the area surrounding the Lower Rio Grande. *See Boyd v. United States*, No. 96-476L, slip op. at 2 (Fed. Cl. Apr. 21, 1997). In 1895, the Company received permits from the Secretary of the Interior and began work on the irrigation project. To help finance an irrigation project along the Rio Grande, the Dam and Irrigation

and Land Company Limited (the English Company) was created, and in 1896, the Company leased all of its rights in the project to the English Company. *Id.* The English Company also acquired control of all of the Company's stock. The English Company later transferred all rights and interests in the Company to Dr. Nathan Boyd.

{3} Also in 1896, the Secretary of the Interior issued a suspension order or embargo suspending work on the irrigation project. The United States sought to enjoin the Company from completing the irrigation project and was granted a temporary injunction. *Id.* at 3. After a hearing, the injunction was dissolved and the suit was dismissed. *Id.* The Supreme Court of the Territory of New Mexico affirmed the dismissal, however, the United States Supreme Court reversed and remanded the case to the district court for a determination regarding the irrigation project's impact of the navigability of the Rio Grande. *United States v. Rio Grande Dam & Irrigation Co.*, 174 U.S. 690, 695-96, 710 (1899).

{4} The district court determined that completion of the irrigation project would not substantially diminish the navigability of the Rio Grande and dismissed the United States' complaint. The United States appealed to the Supreme Court of the Territory of New Mexico, which affirmed the dismissal and remanded the case back to the district court for additional hearings. *United States v. Rio Grande Dam &*

*Irrigation Co.*, 1900-NMSC-042, ¶ 15, 10 N.M. 617, 65 P. 276, *rev'd*, 184 U.S. 416, 425.

{5} The United States supplemented its complaint in the district court, alleging that the Company had forfeited its interest in the irrigation project because the project had not been completed within the five-year time frame set forth in Section 20 of the 1891 Act. The Company failed to respond to the supplemental complaint and the district court entered a default judgment, finding that the Company had forfeited its rights to complete the project and permanently enjoined the Company from attempting to complete the project. *United States v. Rio Grande Dam & Irrigation Co.*, 1906-NMSC-013, ¶ 3, 13 N.M. 386, 85 P. 393, *aff'd sub nom. Rio Grande Dam & Irrigation Co. v. United States*, 215 U.S. 266 (1909). The forfeiture was affirmed by both the Supreme Court of the Territory of New Mexico and the United States Supreme Court. *Rio Grande Dam & Irrigation Co.*, 1906-NMSC-013, ¶ 47; *Rio Grande Dam & Irrigation Co.*, 215 U.S. at 278.

{6} Despite the passage of many years, the English Company and Boyd continued to pursue related claims, including an action in the United States Court of Federal Claims. *See Boyd*, No. 96-476L, slip op. at 5. In that case, Boyd alleged that the United States' control over irrigation works that began as part of the Company's irrigation project constituted a taking of his property and sought just compensation

3

and punitive damages. *Id.* Boyd also alleged fraud. *Id.* The court held that Boyd's taking claims were barred by the statute of limitations and that it did not have jurisdiction as to the fraud claims. *Id.* at 8, 10.

{7} Most recently Boyd intervened in ongoing water rights adjudication proceedings before the Third Judicial District Court of New Mexico. That adjudication involved water rights to the Lower Rio Grande Stream System, to which the United States of America, the Elephant Butte Irrigation District (EBID), the City of Las Cruces, and the State of New Mexico Office of the State Engineer were all parties. The district court issued an order commencing an expedited *inter se* proceeding to determine Boyd's claims. The order directed Boyd to file a statement of claim, describing in detail all of the water rights claimed in the Lower Rio Grande adjudication area. For each water right claimed, Boyd was to specify "the elements of the water right including[:] the priority date, source of water, purpose of use, place of use, point of diversion, location and amount of irrigated acreage, the amount of water claimed and the bases for the elements of the claimed water right(s)."

{8} After Boyd filed his statement of claims, the United States and EBID moved to dismiss Boyd's claims pursuant to Rules 1-012(B)(1), (6) NMRA. The City of Las Cruces also moved to dismiss, alleging that Boyd had failed to comply with the requirements of the district court's case management order and with the requirements

4

for a decree as described in NMSA 1978, Section 72-4-19 (1907). The district court granted the motions to dismiss, finding that Boyd had failed to state a claim upon which relief could be granted and that his claims were barred by the principles of res judicata. This appeal followed.

**II.    DISCUSSION**

{9}    As a preliminary matter, we note that Boyd's arguments regarding his claimed water rights are interwoven with discussion of the water rights of other "Claimants." However, the district court's order on appeal in this case pertains only to claims brought by Boyd. Accordingly, we do not address Boyd's arguments related to the water rights claims of other parties.

{10}    Boyd makes a number of arguments in support of reversal. His arguments center on the assertion that the federal government seized irrigation infrastructures, rights-of-way, and water rights from his predecessor in interest in the early 1900s. Because our review is limited to the district court's decision to dismiss Boyd's claims based on (1) Boyd's failure to state a claim upon which relief can be granted; and (2) principles of res judicata, we only consider Boyd's arguments related to those issues.

## A. Failure to State a Claim

### 1. Standard of Review

{11} "A district court's decision to dismiss a case for failure to state a claim under Rule 1-012(B)(6) is reviewed de novo." *Valdez v. State,* 2002-NMSC-028, ¶ 4, 132 N.M. 667, 54 P.3d 71. "A Rule [1-0]12([B])(6) motion is *only* proper when it appears that plaintiff can neither recover nor obtain relief under any state of facts provable under the claim." *Id.* (internal quotation marks and citation omitted). "In reviewing a district court's decision to dismiss for failure to state a claim, we accept as true all well-pleaded factual allegations in the complaint and resolve all doubts in favor of the complaint's sufficiency." *Nass-Romero v. Visa U.S.A. Inc.*, 2012-NMCA-058, ¶ 6, 279 P.3d 772 (internal quotation marks and citation omitted).

### 2. Boyd's Claims to Water Rights

{12} Boyd argues that the district court erred in finding that he failed to state a cognizable claim to an existing water right. We disagree. The purpose of water rights adjudication in New Mexico is to determine existing water rights. *See* N.M. Const. art. XVI, § 1 ("All existing rights to the use of any waters in this state for any useful or beneficial purpose are hereby recognized and confirmed."); *see also State ex rel. Reynolds v. Pecos Valley Artesian Conservancy Dist.*, 1983-NMSC-044, ¶ 2, 99 N.M.

699, 663 P.2d 358 ("The object of an adjudication suit is to determine all claims to the use of the water in a given stream system.").

{13} To establish an existing water right, a claimant must demonstrate his intent to appropriate the water and he must show that he has actually diverted the water and applied it to beneficial use. *See State ex rel. Reynolds v. Miranda*, 1972-NMSC-003, ¶ 9, 83 N.M. 443, 493 P.2d 409 (holding that "man-made diversion, together with intent to apply water to beneficial use and actual application of the water to beneficial use, is necessary to claim water rights by appropriation in New Mexico"); *see also Snow v. Abalos*, 1914-NMSC-022, ¶ 12, 18 N.M. 681, 140 P. 1044 (holding that the continuing right to divert and utilize water must be preceded by "[t]he intention to apply to beneficial use, the diversion works, and the actual diversion of the water"); *Carangelo v. Albuquerque-Bernalillo Cnty. Water Util. Auth.*, 2014-NMCA-032, ¶ 43, 320 P.3d 492 ("There must be an ultimate, actual beneficial use of the water resulting from the diversion." (internal quotation marks and citation omitted)), *cert. denied by Carangelo v. N.M. State Eng'r*, 2014-NMCERT-002, 322 P.3d 1062.

{14} Boyd's claims, which are based on the Company's initial work on the irrigation project in 1896, cannot serve as the basis for existing water rights. Boyd acknowledges that he is not currently diverting or using the water to which he claims rights and that neither he nor the Company has diverted or distributed irrigation water

7

for more than one hundred years. Boyd also acknowledges that the district court entered a decree of forfeiture as to the Company's rights to its irrigation project and water rights which was affirmed by both the Supreme Court of the Territory of New Mexico and the Supreme Court of the United States in 1909. *See Rio Grande Dam & Irrigation Co.*, 1906-NMSC-013, ¶ 47; *Rio Grande Dam & Irrigation Co.*, 215 U.S. at 277. Nonetheless, Boyd argues that his claimed rights remain intact because governmental interference prevented the Company from completing the project and fully developing its water rights. We are not persuaded.

{15} Boyd's argument relies primarily on what he calls the *Mendenhall* doctrine, referring to *State ex rel. Reynolds v. Mendenhall*, 1961-NMSC-083, 68 N.M. 467, 362 P.2d 998. Boyd contends that, under *Mendenhall*, water rights cannot be forfeited for non-use where certain circumstances prevent the owner from perfecting those rights. We find Boyd's reliance on *Mendenhall* misplaced.

{16} In *Mendenhall*, a landowner drilled a well and used the water supply to irrigate crops. *Id.* ¶ 3. Shortly before the landowner completed construction of the irrigation works, the State Engineer declared the lands to be part of the Roswell Artesian Basin. *Id.* ¶¶ 1-3. A statutory suit for adjudication of rights to water in the basin was filed. *Id.* ¶ 3. The district court found that the landowner had not acquired a valid right to irrigate because the irrigation works were not complete at the time the waters were

8

declared as part of the Basin. *Id.* ¶ 4. Our Supreme Court held that the landowner, who lawfully initiated development of his water right and diligently carried it to completion, did acquire a valid water right with a priority date as of the beginning of his work, notwithstanding the fact that the lands involved were put into the declared basin before work was completed and water put to beneficial use. *Id.* ¶ 29.

{17} The present case is distinguishable from *Mendenhall* because here, the Company, by failing to answer the United States' supplemental complaint before the district court in 1903, forfeited its water rights and did not diligently carry out its project to completion.

**B.    Boyd's Claims of Fraud and Conspiracy**

{18} Boyd denies that his water rights were forfeited or abandoned. He asserts that the United States government and the Company's attorneys entered into a conspiracy to fraudulently "void" the Company's water rights. According to Boyd, the "U.S.'s Attorneys" conspired with the Company's attorneys to file a supplemental complaint in the initial navigation litigation, which the Company's attorneys purposely failed to answer. As a result, the district court entered the default judgment in favor of the United States and ordered the forfeiture of the Company's water rights. Boyd contends that because the forfeiture action was the direct result of conspiracy and

9

fraud by the United States and the Company's attorneys, it is invalid. We are not persuaded.

{19}     Our review of the record reveals that one of the Company's attorneys may have suggested a legal strategy to the U.S. Attorney for forfeiture of the Company's water rights. Subsequently, the Company's attorneys failed to answer the United States' supplemental complaint for forfeiture and as a result, the district court entered a decree declaring the Company's water rights to be forfeited. These facts—by themselves—do not establish a conspiracy between the United States and the Company's attorneys to commit fraud. *See Cain v. Champion Window Co. of Albuquerque, LLC*, 2007-NMCA-085, ¶ 28, 142 N.M. 209, 164 P.3d 90 (explaining the three elements of conspiracy: "(1) that a conspiracy between two or more individuals existed, (2) that specific wrongful acts were carried out by [the d]efendants pursuant to the conspiracy, and (3) that [the p]laintiffs were damaged as a result of such acts" (alterations, internal quotation marks and citation omitted)); *see also State ex rel. Peterson v. Aramark Corr. Servs., LLC*, 2014-NMCA-036, ¶ 39, 321 P.3d 128 (stating that the elements of fraud are "that the other party (1) made a misrepresentation of fact . . . (2) with the intent to deceive and to induce the injured party to act upon it, (3) and upon which the injured party actually and detrimentally relies" (omission in original) (internal quotation marks and citation omitted)).

{20}     If a fraud was indeed perpetrated, it was a fraud on the Company by its own attorneys, the remedy for which would not be for this Court to reverse the Third Judicial District's 1903 decree of forfeiture as Boyd suggests. Rather, the Company could have brought an action against its attorneys for malpractice. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396 (1993) (stating that "clients must be held accountable for the acts and omissions of their attorneys"); *see also Resolution Trust Corp. v. Ferri*, 1995-NMSC-055, ¶ 17, 120 N.M. 320, 901 P.2d 738 (stating that the "remedy for attorney failure lies in malpractice suit."). To the extent that Boyd alleges fraud against the United States, the Federal Tort Claims Act "provides the exclusive remedy for tort actions against the federal government[.]" *Rehoboth McKinley Christian Healthcare Servs., Inc. v. U.S. Dep't of Health & Human Servs.*, 853 F. Supp. 2d 1107, 1112 (D.N.M. 2012) (internal quotation marks and citation omitted). Accordingly, Boyd does not have a cause of action for fraud against the United States in state court. We conclude that Boyd's claims of conspiracy and fraud are irrelevant and are unsupported by the record.

**C.     Res Judicata**

{21}     The doctrine of claim preclusion, or "res judicata is founded on principles of fairness and justice." *Kirby v. Guardian Life Ins. Co. of Am.*, 2010-NMSC-014, ¶ 61, 148 N.M. 106, 231 P.3d 87 (emphasis omitted). It "ensures finality, advances judicial

11

economy, and avoids piecemeal litigation." *Bank of Santa Fe v. Marcy Plaza Assocs.*, 2002-NMCA-014, ¶ 14, 131 N.M. 537, 40 P.3d 442. "The principle of claim preclusion precludes a claim when there has been a full and fair opportunity to litigate issues arising out of that claim." *Tunis v. Country Club Estates Homeowners Ass'n, Inc.*, 2014-NMCA-025, ¶ 19, 318 P.3d 713 (internal quotation marks and citation omitted), *cert. denied,* 2014-NMCERT-001, 321 P.3d 936. Res judicata applies if four elements are met: "(1) the parties must be the same, (2) the cause of action must be the same, (3) there must have been a final decision in the first suit, and (4) the first decision must have been on the merits." *Id.* ¶ 20 (internal quotation marks and citation omitted). "Whether the elements of claim preclusion are satisfied is a legal question, which we review de novo." *Id.* (internal quotation marks and citation omitted).

{22}     In this case, the forfeiture action was litigated extensively in the Third Judicial District Court, the Supreme Court of the Territory of New Mexico and in the United States Supreme Court. *See Rio Grande Dam & Irrigation Co.*, 215 U.S. 266; *see also United States v. Rio Grande Dam & Irrigation Co.*, 1906-NMSC-013. Boyd also litigated a taking claim in the Federal Court of Claims. *Boyd*, No. 96-476L, slip op. at 5.

{23} In light of these prior decisions, the district court found that res judicata applied because: (1) the parties did not dispute that the first element had been met (that the parties in all the suits were the same); (2) the cause of action in the earlier decisions was the same, stemming from the Company's initial claims irrigation project and related water rights; (3) the prior decisions were final because the initial forfeiture was a final order of the district court, as it was subsequently affirmed by the Territory of New Mexico Supreme Court and Boyd was denied post-judgment relief; and (4) the prior decisions were on the merits of Boyd's claims because both appellate courts evaluated the merits of the forfeiture and ruled on that basis. We agree with the district court's reasoning with respect to the second, third and fourth elements.

{24} The critical issue before this court is the first res judicata element. Boyd asserts that, in its order to dismiss, the district court incorrectly stated that the parties did not dispute that this element had been met. According to Boyd, he has continually alleged that because Dr. Boyd himself was not a party to the forfeiture proceedings, the first element of res judicata is *not* satisfied. He reiterates that argument on appeal.

{25} "Res judicata prevents a party or its privies from repeatedly suing another for the same cause of action." *Deflon v. Sawyers*, 2006-NMSC-025, ¶ 2, 139 N.M. 637, 137 P.3d 577. Because Dr. Boyd was not a named party in the previous litigation, we

13

must determine whether he was in privity with the Company, which *was* a party to the litigation.

> There is no definition of "privity" which can be automatically applied in all cases involving the doctrines of res judicata and collateral estoppel. Thus, each case must be carefully examined to determine whether the circumstances require its application. This is so, notwithstanding the general assumption that res judicata applies only if the parties in the instant action were the same and identical parties in the prior action resulting in a judgment. Privity requires, at a minimum, a substantial identity between the issues in controversy and showing that the parties in the two actions are really and substantially in interest the same.

*Id.* ¶ 4 (internal quotation marks and citation omitted). Privity may exist where the parties have a "concurrent relationship to the same property right" or a "successive relationship to the same property or right." *Id.* (internal quotation marks and citations omitted).

{26}    In the present case, Boyd asserts that the Company transferred its interests in the irrigation project to the English Company, which in turn transferred the same interests to Dr. Boyd. Boyd's claims necessarily depend on his assertion that he is successor in interest to the water rights of the Company. This puts him in privity with the Company and accordingly, for the purposes of res judicata, he is considered the same party. Therefore, we conclude that all four elements of res judicata are met and that Boyd's claims are precluded as a result.

**III.    CONCLUSION**

{27}    For the foregoing reasons, we affirm the decision of the district court.

{28}    **IT IS SO ORDERED.**

_____
**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**J. MILES HANISEE, Judge**

15