## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2020-NMCA-017**

**Filing Date: December 12, 2019**

**No. A-1-CA-36186**

**BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF RIO ARRIBA and
GEORGE MARTINEZ,**

Petitioners-Appellees,

v.

**BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF SANTA FE,**

Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Sarah M. Singleton, District Judge**

Released for Publication April 7, 2020.

Adan E. Trujillo
Española, NM

for Appellees

R. Bruce Frederick, Santa Fe County Attorney
Rachel A. Brown, Deputy County Attorney
Santa Fe, NM

for Appellant

**OPINION**

**DUFFY, Judge.**

**{1}**     This appeal arises from the district court's peremptory writ of mandamus compelling the Board of County Commissioners of the County of Santa Fe (Board) to publish notice of Petitioners' annexation petition pursuant to NMSA 1978, Section 4-33-3 (1947, amended 2019). The Board appeals, arguing that the annexation petition was facially defective and thus it had no duty to publish notice. At the heart of this appeal is

what is required to effect a valid annexation petition, an issue of first impression in New Mexico. Because we conclude that the annexation petition was legally defective, we reverse the district court with instructions to quash the writ of mandamus.

**BACKGROUND**

**{2}** The City of Española lies within the boundaries of both Santa Fe County and Rio Arriba County. Residents living on the Santa Fe County side of Española must travel to the City of Santa Fe (the county seat of Santa Fe County) to access county services, such as the county clerk or county assessor, whereas residents living on the Rio Arriba County side of Española are able to access these same county services at Rio Arriba County satellite offices located in Española, as well as at the county seat in Tierra Amarilla. Petitioner George Martinez and others who live within the Santa Fe County side of Española wish to access the county services available at the Rio Arriba County satellite offices in Española, given their proximity. To accomplish this, Martinez and others began the process to annex the Santa Fe County portion of Española to Rio Arriba County, pursuant to NMSA 1978, Sections 4-33-1 to -3 (1947, amended 2019).

**{3}** Martinez prepared a "Petition for Annexation" in light of the requirements set forth in Section 4-33-2, which provides:

> A petition executed by at least fifty-one percent (51%) of the qualified electors residing within the portion of the county proposed to be annexed shall be filed with the county commissioners of the county in which such portion is located. Such petition shall set forth the facts showing the existence of the conditions described in Section [4-33-1] . . . hereof and shall accurately set out the boundaries of the portion of the county proposed to be annexed.

The statute required the annexation petition to set forth facts showing that the following two conditions existed:

> [(1)] Whenever, because of the location and conditions of roads, or the existence or nonexistence of transportation facilities, it will be more convenient for the residents of any portion of a county to travel to the county seat of some other contiguous county, and [(2)] because of such location and condition of roads or the existence or nonexistence of transportation facilities, it will be more convenient and economical for such other county to render governmental services to such portion of such other county, the portion of the county so affected may be annexed to such other county in the following manner.

Section 4-33-1; *see Youree v. Ellis*, 1954-NMSC-002, ¶ 12, 58 N.M. 30, 265 P.2d 354 (stating that these conditions are "the decisive grounds upon which alone the court is authorized to order an election on annexation"). The first condition—hereinafter referred to as the "county seat condition"—forms the basis of the parties' dispute in this appeal.

**{4}** Two maps were attached to the petition. The first map described "[t]he Santa Fe County territory proposed to be annexed into Rio Arriba County." The second depicted the distances and travel times from Española to the Santa Fe County offices in the City of Santa Fe and to the Rio Arriba County satellite offices in Española, and showed that the Rio Arriba County satellite offices were closer for the petitioning residents.

**{5}** Martinez delivered the petition to the Santa Fe County Manager and requested that the Board publish notice of the petition, as required by law. *See* § 4-33-3 (1947, amended 2019) ("Immediately upon the filing of such petition . . ., it shall be the duty of the county commissioners with whom such petition is filed to cause a notice to be published in some newspaper or newspapers of general circulation in each county affected."). The Board declined to take any action on the petition after concluding that it was "legally defective on its face" in that "it [did] not set forth facts showing that . . . because of the location and conditions of roads or the existence or nonexistence of transportation facilities[,] . . . it would be more convenient for citizens in the area proposed to be annexed to travel to the county seat of Rio Arriba County (Tierra Amarilla) as opposed to the county seat of Santa Fe County (the City of Santa Fe)." The Board advised in a letter to Martinez that it "was not making a judicial determination about whether the conditions that would justify annexation do, in fact, exist" but rather, "was acting within its recognized authority to determine whether a citizen petition requesting it to act is legally valid on its face."

**{6}** Martinez and the Board of County Commissioners of the County of Rio Arriba (together, Petitioners) filed a petition for a writ of mandamus in the district court in Santa Fe, asking the court to compel the Board to publish notice pursuant to Section 4-33-3. Petitioners stated that although the residents of the area proposed to be annexed "live minutes away from the Rio Arriba [satellite offices] also located in the City of Española, as residents of Santa Fe County they must travel to the Santa Fe County Annex in the City of Santa Fe to receive most county services." Arguing that "[s]tatutes should be construed in the most beneficial way of which their language is susceptible to prevent absurdity, hardships, or injustice, to favor public convenience, and to oppose all prejudice to public interests[,]" *Cox v. City of Albuquerque*, 1949-NMSC-041, ¶ 14, 53 N.M. 334, 207 P.2d 1017, Petitioners contended that the annexation petition complied with the county seat condition in Section 4-33-1 because it set forth facts demonstrating that the distance and average travel times to the Rio Arriba County satellite offices in Española were much shorter than the distance and average travel times to the Santa Fe County offices.

**{7}** After receiving a response from the Board, the district court conducted a non-evidentiary hearing and issued a peremptory writ of mandamus, finding and concluding in relevant part:

> Although the residents of the area proposed to be annexed "live minutes away from the Rio Arriba [Satellite Offices] also located in the City of Española, as residents of Santa Fe County they must travel to the Santa Fe County Annex in the City of Santa Fe to receive most county services."

Martinez had filed the signature pages of the annexation petition and requested that Santa Fe County "publish notice that the petition had been received as required by law [and] included a proposed form of notice."

The Board approved a motion that the Board "disapprove and take no further action on the petition since it is legally defective on its face because it does not set forth facts showing the existence of the statutory conditions justifying annexation" and so advised Martinez in a letter.

"A plain language reading of . . . [Section] 4-33-1 would do a disservice to the purpose of the statute as well as to the people of Santa Fe County, because after all, all we are talking about is giving the people the opportunity to vote on whether or not they want this portion of the county to be allowed to join Rio Arriba County instead of Santa Fe County."

Under the "more nuanced type of statutory construction" that interprets statutes "based on perceived legislative objective and purpose rather than on literal language[,]" Section 4-33-1 is divided into two parts: the first part deals with the convenience of the residents to interact with their county by traveling to the county seat of the new county and the second part looks at the ability of the new county to render government services to the petitioner and the people in the petitioner's area.

The petition "showed that the people in the area proposed to be annexed would be able to interact with their potential new county . . . government on a more convenient basis based on the fact that there are county services available in Española" and "[d]espite the fact that the petition could have had more information in it about Tierra Amarilla, the petition was sufficient to comply with the aforementioned intent of the [L]egislature to ensure that facts are set forth that it is more convenient to interact with the potential new county and the potential new county government."

The Board appeals.

## DISCUSSION

**{8}** The Board argues that it had no duty to publish notice of a defective annexation petition and cannot be compelled by mandamus to do so. *See Kiddy v. Bd. of Cty. Comm'rs of Eddy Cty.*, 1953-NMSC-023, ¶ 10, 57 N.M. 145, 255 P.2d 678 ("The county commissioners are called upon to act upon legal petitions only. If a petition is not legal, no imperative duty exists on their part to call an election. They cannot by mandamus be compelled to perform an illegal task."); *State of N.M. ex rel. San Miguel BCC v. Williams*, 2007-NMCA-036, ¶ 9, 141 N.M. 356, 155 P.3d 761 ("Mandamus is appropriate to compel the performance of an affirmative act by another where the duty to perform the act is clearly [prescribed] by law and where there is no other plain, speedy and adequate remedy in the ordinary course of law." (internal quotation marks and citation

omitted)). Whether the annexation petition is defective depends on whether it satisfied the requirements set forth in Sections 4-33-1 and -2, and specifically, whether the petition set forth facts to establish the county seat condition. We must therefore determine what the Legislature intended in Section 4-33-1 by requiring as grounds for annexation that "it will be more convenient for the [petitioning] residents of any portion of a county to travel to the county seat of some other contiguous county." Resolution of this question presents an issue of statutory construction that we review de novo. *Cooper v. Chevron U.S.A., Inc.*, 2002-NMSC-020, ¶ 16, 132 N.M. 382, 49 P.3d 61 ("The meaning of language used in a statute is a question of law that we review de novo.").

{9}     The parties advocate different approaches to statutory construction. The Board argues that the plain language of Section 4-33-1 is clear and unambiguous, and must be given effect without further statutory interpretation. *State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 18, 117 N.M. 346, 871 P.2d 1352 ("When a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." (internal quotation marks and citation omitted)). Petitioners, on the other hand, argue that a literal application of the county seat condition is absurd and unjust and ask us to apply a sensible construction instead. *See Baker v. Hedstrom*, 2013-NMSC-043, ¶ 11, 309 P.3d 1047 ("[I]f the plain meaning of the statute is doubtful, ambiguous, or if an adherence to the literal use of the words would lead to injustice, absurdity or contradiction, we will construe the statute according to its obvious spirit or reason." (alteration, internal quotation marks, and citation omitted)). As our Supreme Court wrote in *Gallegos*, "the two approaches, correctly understood, can be viewed as complementary, not contradictory." 1994-NMSC-023, ¶ 22. "That is, if the meaning of a statute is truly clear—not vague, uncertain, ambiguous, or otherwise doubtful—it is of course the responsibility of the judiciary to apply the statute as written and not to second-guess the [L]egislature's selection from among competing policies or adoption of one of perhaps several ways of effectuating a particular legislative objective." *Id.* "But [our Supreme] Court also cautioned against an overly simplistic application of the plain-meaning rule, stating that it is part of the essence of judicial responsibility to search for and effectuate the legislative intent—the purpose or object—underlying the statute." *Bishop v. Evangelical Good Samaritan Soc.*, 2009-NMSC-036, ¶ 10, 146 N.M. 473, 212 P.3d 361 (internal quotation marks and citation omitted).

{10}     "Therefore, when presented with a question of statutory construction, we begin our analysis by examining the language utilized by the Legislature, as the text of the statute is the primary indicator of legislative intent." *Id.* ¶ 11. "We also consider the statutory subsection in reference to the statute as a whole and read the several sections together so that all parts are given effect." *Id.* In addition to the statutory language, we examine "the context in which it was promulgated, including the history of the statute and the object and purpose the Legislature sought to accomplish." *Maes v. Audubon Indem. Ins. Grp.*, 2007-NMSC-046, ¶ 11, 142 N.M. 235, 164 P.3d 934; *State v. Rivera*, 2004-NMSC-001, ¶ 13, 134 N.M. 768, 82 P.3d 939 ("In other words, a statutory subsection may not be considered in a vacuum[.]" (internal quotation marks and citation omitted)). "The guiding principle of statutory construction is that a statute should be

interpreted in a manner consistent with legislative intent." *Hovet v. Allstate Ins. Co.*, 2004-NMSC-010, ¶ 10, 135 N.M. 397, 89 P.3d 69.

**{11}** Turning now to the statute, a literal reading of the county seat condition would require that annexation petitions include facts showing that it is more convenient for residents to travel to a specific geographical location—the county seat. *See* § 4-33-1. The parties do not dispute that "county seat" refers to a specific and established location in each county, nor do they claim that the term is ambiguous. As applied in this case, the parties agree that a plain language interpretation would require Petitioners' annexation petition to contain facts showing that it is more convenient for Española residents to travel to Tierra Amarilla than to Santa Fe. Petitioners also concede that a literal interpretation of the county seat condition would foreclose their petition, as they cannot show this condition is satisfied here.

**{12}** Petitioners argue, however, that "the legislative intent was not rooted in a desire to require convenient travel to a geographical location like the county seat for its own sake, but [rather,] a desire to ensure convenient access to the elected officials and the governmental functions and processes they administer." Petitioners contend that because the county seat is the headquarters of county government, the Legislature's purpose in adopting the county seat condition was to gauge the convenience of accessing and interacting with the governmental services available there. In this case, Petitioners argue that it is "common knowledge" that most Rio Arriba County services are available in Española, and thus, the practical need to travel to Tierra Amarilla is "a seldom occurrence." Consequently, even though Tierra Amarilla is farther away than Santa Fe, they contend that it is more convenient for them to interact with the Rio Arriba County government in Española than it is for them to interact with the Santa Fe County government in Santa Fe. Petitioners argue that a plain meaning interpretation of the county seat condition leads to an unjust and absurd result because it fails to consider the practical convenience of accessing county governmental services in locations outside of the county seat and ask us to adopt a construction that would consider the convenience of accessing county governmental services in other locations where they are found.

**{13}** To determine the Legislature's intent, we begin by examining the language used by the Legislature as the primary indication of legislative intent. *Bishop*, 2009-NMSC-036, ¶ 11. We observe that Section 4-33-1 contains two conditions that, pursuant to Section 4-33-2, must exist as grounds for annexation. *See generally Stevenson v. Louis Dreyfus Corp.*, 1991-NMSC-051, ¶ 14, 112 N.M. 97, 811 P.2d 1308 (stating that conjunctive wording in a statute requires that all listed elements be present). The first condition evaluates convenience from the perspective of residents seeking annexation. For this condition, the Legislature stated that the annexation petition must show that it is more convenient for residents to "travel to the county seat" of the new county. *See* §§ 4-33-1 and -2. In juxtaposition, the second condition evaluates convenience from the perspective of the new county, and for this condition, the Legislature stated that the annexation petition must show that it will be more convenient for the new county to "render governmental *services*" to those residents. Section 4-33-1 (emphasis added).

While Petitioners' interpretation of the first condition would effectively substitute the term "county services" in place of the Legislature's use of "county seat," it is telling that the Legislature chose to use the term "*services*" only in the second condition. "We have previously said that when the Legislature includes a particular word in one portion of a statute and omits it from another portion of that statute, such omission is presumed to be intentional." *Schultz ex rel. Schultz v. Pojoaque Tribal Police Dep't*, 2013-NMSC-013, ¶ 36, ___ P.3d ___ (internal quotation marks and citation omitted). Had the Legislature intended consider the convenience of accessing "county services" in the first condition, it could have done so expressly. *State v. Greenwood*, 2012-NMCA-017, ¶ 38, 271 P.3d 753 ("The Legislature knows how to include language in a statute if it so desires." (alteration, internal quotation marks, and citation omitted)). Accordingly, a purely textual reading weighs against Petitioners' proposed construction.

**{14}** Likewise, our review of the history of the statute and the context in which it was promulgated inform our understanding of the Legislature's purpose in designating "travel to the county seat" as the measure of convenience. *State v. Office of Pub. Def. ex rel. Muqqddin*, 2012-NMSC-029, ¶ 13, 285 P.3d 622 (stating that to give effect to the intent of the Legislature, "we examine the plain language of the statute as well as the context in which it was promulgated, including the history of the statute and the object and purpose the Legislature sought to accomplish" (internal quotation marks and citation omitted)). The Legislature enacted Section 4-33-1 and -2 in 1947 against a backdrop of laws requiring that governmental services be provided at the county seat. The county seat is the headquarters of county government, the place where the county government must maintain its offices and where county services must be provided, as required by the New Mexico Constitution and a constellation of statutes. *See, e.g.*, N.M. Const. art. VI, § 13 (amended 2018) (providing that the district court must be at the county seat); NMSA 1978, § 4-44-34 (1939) (providing that county officers "shall establish and maintain their offices and headquarters for the transaction of the business of their respective offices at the county seat of their respective counties and shall there keep all the books, papers and official records pertaining to their respective offices"); NMSA 1978, § 10-1-13(A) (2011) (defining county officers as the "county commissioner, county assessor, county clerk, county sheriff, county treasurer, probate judge, . . . and small claims court clerk"); NMSA 1978, § 34-7-4 (1869-1870) (providing that the probate court must be at the county seat); NMSA 1978, § 4-38-8 (1981) (requiring the board of county commissioners to meet at the county seat at quarterly meetings); NMSA 1978, § 34-6-24 (1988) (providing that the district court must be at the county seat). While counties may choose to provide services in locations outside of the county seat, we agree with the Board that "counties may over time change the number, type and extent of governmental services they provide outside their county seats based on funding or other considerations." Petitioners, failing to acknowledge the import of these enactments, argue that "[i]f all county officers and corresponding functions they serve were not headquartered in the county seat, then a plain language reading of Section 4-33-1 would require convenience of travel to the county seat because it is a specific geographical location that is symbolic of living in a particular county." But that is precisely the point—without a substantial change to a number of laws, county services must *always* be provided in the county seat, whereas the same is not true for satellite

offices. Given this, the Legislature's requirement that annexation petitions state convenience in terms of travel to the county seat—the only location where county services are *required* to be comprehensively provided—is neither unreasonable nor absurd, even if some county services are presently closer for Petitioners in this particular case.

**{15}** As a further illustration of this point, in this case, some county services are *only* available at the county seat—the First Judicial District Court and the County Detention Center. Though Petitioners acknowledge that not all county services are available in Española, they have not suggested how convenience should be evaluated in circumstances where access to some county services is rendered *less* convenient by annexation, or more generally, what kinds and types of services are enough to establish that it is more convenient for residents to interact with another county. The Legislature has provided no guidance for resolving these questions within the Act, nor has it adopted any procedure for evaluating the merits or validity of an annexation petition before notice is published. *See* Section 4-33-3 (stating that a resident may bring an action within thirty days *after* notice is published alleging that "the conditions described in Section 4-33-1 . . . do not exist" and "[t]he judge, after hearing, shall make a determination as to whether the allegations of the petition are well taken"); *Rivera*, 2004-NMSC-001, ¶ 16 ("[W]e look not only to what is explicitly stated by the language of [the statute] but we also take special notice of what has been omitted from the purview of the statute."). In this case, both issues were addressed in mandamus proceedings, pursuant to NMSA 1878, §§ 44-2-1 to -14 (1884, as amended through 1899). The district court made factual findings on the actual convenience of interacting with Rio Arriba County before concluding that the annexation petition complied with the Legislature's intent. That factual resolution was necessary here, and that it may be necessary every time an annexation petition states convenience in terms of accessing county services rather than travelling to the county seat, suggests that a "county services" interpretation would render unclear what is required to effect a facially valid annexation petition. *N.M. State Bd. of Ed. v. Bd. of Ed. of Alamogordo Pub. Sch. Dist. No. 1*, 1981-NMSC-031, ¶ 14, 95 N.M. 588, 624 P.2d 530 ("Legislative intent is to be given effect by adopting a construction which will not render the statute's application absurd or unreasonable and will not lead to injustice or contradiction.").

**{16}** For all of these reasons, we conclude that a plain meaning construction of the county seat condition is consistent with and best effectuates the Legislature's intent in enacting Section 4-33-1. *See Gallegos*, 1994-NMSC-023, ¶ 3 (indicating that we will not depart from the plain language of a statute unless it is necessary to resolve an ambiguity or absurdity); *see also High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 ("The court will not read into a statute . . . language which is not there, particularly if it makes sense as written." (internal quotation marks and citation omitted)); *N.M. Petroleum Marketers Ass'n v. N.M. Envtl. Improvement Bd.*, 2007-NMCA-060, ¶ 11, 141 N.M. 678, 160 P.3d 587 (adhering to the plain meaning when "[a]ppellants have not convinced us that adherence to the literal meaning of the broad language employed by . . . the Legislature would lead to injustice, absurdity, or internal contradiction"). Though we acknowledge

that county services have become more accessible and available without the need to physically travel to a county office in the seventy years since Sections 4-33-1 and -2 were enacted, whether travel to the county seat remains the preferred measure of convenience for residents seeking annexation is a matter for the Legislature to determine. *Perea v. Baca*, 1980-NMSC-079, ¶ 23, 94 N.M. 624, 614 P.2d 541 ("If a change in the statute is necessary or proper, that is a task for the Legislature."); *M.D.R. v. State ex rel. Human Servs. Dep't*, 1992-NMCA-082, ¶ 13, 114 N.M. 187, 836 P.2d 106 ("[I]t is not the function of the court of appeals to legislate. Correction of whatever inequity exists in such a situation is best left to the [L]egislature." (citation omitted)).

{17}    Applying the plain meaning construction of the county seat condition, we conclude that the district court erred in finding that the petition complied with Section 4-33-1. As applied in this case, a plain language reading of Section 4-33-1 requires that the petition state facts showing that it will be more convenient for the residents of Española currently residing in Santa Fe County to travel to Tierra Amarilla. Neither the petition nor its attachments made any reference to Tierra Amarilla and thus failed to comply with the statutory requirement that a petition set forth facts showing the existence of both conditions described in Section 4-33-1. Given this, the Board had no duty to publish notice pursuant to Section 4-33-3 and the district court erred by issuing a writ of mandamus directing it to do so. *See Kiddy*, 1953-NMSC-023, ¶ 12 (stating that a writ of mandamus should be refused when a petition was invalid, as there is no clear fact that would require performance by the board). We therefore reverse the district court.

{18}    As a result of our holding, it is unnecessary to address the remaining arguments raised by the parties in this appeal.

**CONCLUSION**

{19}    We reverse the district court with instructions to quash the writ of mandamus.

{20}    **IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**JULIE J. VARGAS, Judge**