This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-38577

**JENNIFER SKEET,**

Protestant-Appellee,

v.

**NEW MEXICO TAXATION &
REVENUE DEPARTMENT,**

Respondent-Appellant,

**IN THE MATTER OF THE PROTEST
OF ASSESSMENT ISSUED AS
LETTER ID NO. L1393543344.**

**APPEAL FROM THE ADMINISTRATIVE HEARINGS OFFICE
Ignacio V. Gallegos, Hearing Officer**

Wolfley Law Office
Jeanette Wolfley
Bernalillo, NM

for Appellee

Hector H. Balderas, Attorney General
Peter Breen, Special Assistant Attorney General
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** At issue in this appeal is whether Protestant Jennifer Skeet (Taxpayer) is entitled to the income tax exemption set forth in NMSA 1978, Section 7-2-5.5 (1995), which

provides that income earned by a tribal member is exempt from state taxation if it is earned for work performed within the boundaries of the reservation and the tribal member "lives within the boundaries" of the reservation. Taxpayer is an enrolled member of the Navajo Nation who works for the Tribe and lives within the boundaries of the Navajo Nation Reservation in a rental property during the work week. An administrative hearing officer concluded that Taxpayer met the requirements for the Section 7-2-5.5 income tax exemption and granted Taxpayer's protest, abating her 2012 income taxes, penalties, and interest. The New Mexico Taxation and Revenue Department (the Department) now appeals, arguing that Taxpayer is not entitled to the exemption because she must be domiciled on tribal land to claim the exemption and, according to the Department, Taxpayer was domiciled in Albuquerque during the relevant period. We affirm the administrative hearing officer's decision and order.

## STANDARD OF REVIEW

{2}     On appeal, this Court may only set aside the decision and order of an administrative hearing officer if it is "(1) arbitrary, capricious, or an abuse of discretion[,] (2) not supported by substantial evidence . . .[,] or (3) otherwise not in accordance with the law." NMSA 1978, § 7-1-25(C) (2015). Where, as here, the facts are not in dispute and the question is a matter of law, our review is de novo. *A&W Rests., Inc. v. N.M. Dep't of Tax'n & Revenue*, 2018-NMCA-069, ¶ 6, 429 P.3d 976.

{3}     "Where an exemption or deduction from tax is claimed, the statute must be construed strictly in favor of the taxing authority, the right to the exemption or deduction must be clearly and unambiguously expressed in the statute, and the right must be clearly established by the taxpayer." *Sec. Escrow Corp. v. N.M.  Tax'n & Revenue Dep't*, 1988-NMCA-068, ¶ 8, 107 N.M. 540, 760 P.2d 1306. *But see Okla. Tax Comm'n v. Sac & Fox Nation*, 508 U.S. 114, 123-24 (1993) ("Although exemptions from tax laws should, as a general rule, be clearly expressed, the tradition of Indian sovereignty requires that the rule be reversed when a [s]tate attempts to assert tax jurisdiction over an Indian tribe or tribal members living and working on land set aside for those members." (internal quotation marks and citation omitted)).

## DISCUSSION

{4}     The New Mexico Legislature specifically exempted from state income tax members of a federally recognized tribe who live and work on tribal land:

Income earned by a member of a New Mexico federally recognized Indian nation, tribe, band or pueblo, his spouse or dependent, who is a member of a New Mexico federally recognized Indian nation, tribe, band or pueblo, is exempt from state income tax if the income is earned from work performed within and the member, spouse or dependent lives within the boundaries of the Indian member's or the spouse's reservation or pueblo grant or within the boundaries of lands held in trust by the United States for the benefit of the member or spouse or his nation, tribe, band or

pueblo, subject to restriction against alienation imposed by the United States.

Section 7-2-5.5. There is no dispute that Taxpayer established three of the four criteria necessary for this exemption: (1) she is an enrolled member of the Navajo Nation; (2) the Navajo Nation is a New Mexico federally recognized Indian nation; and (3) Taxpayer's income was derived wholly from reservation sources. The sole dispute is whether Taxpayer "lives within the boundaries" of the Navajo Nation.

**{5}** The New Mexico Legislature has not defined what it means to "live[] within the boundaries of" tribal lands in the Income Tax Act, NMSA 1978, §§ 7-2-1 to -40 (1965, as amended through 2022). The Department argues that this phrase is synonymous with "domicile"—a longstanding legal term of art that means, "The place at which a person has been physically present and that the person regards as home; a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere." *Domicile*, *Black's Law Dictionary* (11th ed. 2019); *see also* 3.3.1.9(C)(1) NMCA (defining "domicile" for purposes of the Income Tax Act and providing criteria to determine domicile). The hearing officer rejected this argument and noted that prior administrative decisions have interpreted the phrase "lives within the boundaries" of tribal land to accord "great weight to 'a continuing physical presence' as opposed to the person's intent to return, remain and make a permanent home, which is a guiding principle of 'domicile.'" Applying that standard, the hearing officer concluded that "[t]he exemption of Section 7-2-5.5 applies to [Taxpayer's] income, because during 2012 she lived within the boundaries of the Navajo Nation when she earned her income." The hearing officer reasoned that Taxpayer

> lives on trust lands within the Navajo Nation while working, and she lives outside the Navajo Nation when not working. She spends seventy percent of her time on the Navajo Nation, either in the Fort Defiance or Window Rock area, or at the family ranch in Bread Springs. For the other thirty percent of her time, she spends time with her husband, primarily in Albuquerque.

**{6}** This conclusion was supported by specific findings in the hearing officer's decision and order. We summarize those findings briefly here. Since 1998, Taxpayer has been employed by the Navajo Nation as an attorney with the Office of Legislative Counsel. That employment has been her only source of income. During the work week, she lives in a home that she rents in Fort Defiance, Arizona, which is within the Navajo Nation. Taxpayer spends approximately 70 percent of her time each year on lands within the Navajo Nation. She is a registered voter for the Navajo Nation's tribal elections and a member of the Navajo bar.

**{7}** The hearing officer also made findings regarding Taxpayer's Albuquerque connections, most notably that Taxpayer and her husband purchased a home in Albuquerque in 2000 and that is where she spends weekends. The hearing officer found that Taxpayer would leave Albuquerque early Monday morning to go to work and would

return to Albuquerque Friday evening. Taxpayer receives mail at her Albuquerque address because it is the most reliable, though she has tried using post office boxes in Gallup, New Mexico, Fort Defiance, Arizona, and Window Rock, Arizona. Using her Albuquerque address, Taxpayer is licensed to drive in New Mexico, is registered to vote in New Mexico, and registers her vehicles in New Mexico. The hearing officer noted that many of these activities would support a finding that Taxpayer was domiciled in Albuquerque in 2012, but never made an express finding as to Taxpayer's domicile. Instead, the hearing officer concluded that domicile was not the standard governing the exemption and, based on Taxpayer's time and activities within the Navajo Nation during 2012, Taxpayer was living within the boundaries of the Navajo Nation and entitled to the exemption.

{8}     The Department's sole argument on appeal is that the Legislature's use of the term "lives within the boundaries" of tribal land in Section 7-2-5.5 is synonymous with "domicile." In support, the Department contends the language in Section 7-2-5.5 derives from federal jurisprudence and has the same meaning. The Department is correct that Section 7-2-5.5 appears to derive from federal jurisprudence. In *McClanahan v. State Tax Commission of Arizona*, 411 U.S. 164 (1973), the United States Supreme Court held that Arizona "was without jurisdiction to subject a tribal member living on the reservation, and whose income derived from reservation sources, to a state income tax absent an express authorization from Congress." *Sac & Fox Nation*, 508 U.S. at 123. The Court noted that "[t]he residence of a tribal member is a significant component of the *McClanahan* presumption against state tax jurisdiction," and stated that the presumption "comes into effect only when the income is earned from reservation sources by a tribal member residing on the reservation." *Sac & Fox Nation*, 508 U.S. at 123. The Court later clarified that "a tribal member need not live on a formal reservation to be outside the [s]tate's taxing jurisdiction; it is enough that the member live in 'Indian country.'" *Id.* at 123. *But see Okla. Tax Comm'n v. Chickasaw Nation*, 515 U.S. 450, 464, 466 (1995) (holding that the rule articulated in *McClanahan* "that Indians and Indian tribes are generally immune from state taxation" does not operate outside Indian country to preclude the state's "sovereign right to tax income, from all sources, of those who choose to live within that jurisdiction's limits"). When our Legislature enacted Section 7-2-5.5 in 1995, it effectively codified these principles.

{9}     The Department has not, however, demonstrated that *McClanahan* and its progeny require that the tribal member be *domiciled* on tribal land to claim the exemption. *McClanahan*, *Sac and Fox Nation*, and *Chickasaw Nation* never used the term "domicile" to describe the circumstances in which a tribal member was exempt from state taxation.[1] Instead, the United States Supreme Court used the terms "living on tribal land" and "residence"—repeatedly and consistently—when evaluating whether a tribal member was exempt from state income taxes. *See McClanahan*, 411 U.S. at 175 (noting that "since the signing of the Navajo treaty, Congress has consistently acted under the assumption that the [s]tates lacked jurisdiction over Navajos living on the

---

[1]Indeed, the single reference to the word domicile appears in *Chickasaw Nation* when the Court quoted a 1937 case for the principle that domicile within the state affords a basis for state taxation even if the income is earned outside of the taxing jurisdiction. 515 U.S. at 463.

reservation"); *see also Sac & Fox Nation*, 508 U.S. at 123-24 ("To determine whether a tribal member is exempt from state income taxes under *McClanahan*, a court first must determine the residence of that tribal member."); *Chickasaw Nation*, 515 U.S. at 462-64 (stating that the *McClanahan* rule does not apply to "members who reside in [the state] outside Indian country").

{10}     The Department has not attempted to reconcile the plain language of these cases, nor has it developed an argument as to why the terms "residence" and "living on the reservation" in these cases should be interpreted to mean "domicile" for purposes of construing Section 7-2-5.5. Furthermore, the Department has not offered an analysis of the other considerations that normally factor into our evaluation of a statute. For example, the Department has not said why we should construe "living within the boundaries" of tribal land to mean domicile when the Legislature expressly used the term "domicile" in defining "residents" who are subject to state income tax. *See* § 7-2-2(S) (defining "resident" to include "an individual who is domiciled in this state during any part of the taxable year or an individual who is physically present in this state for one hundred eighty-five days or more during the taxable year"); § 7-2-3 (imposing a tax on the net income of every resident); *see also Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 14, 121 N.M. 764, 918 P.2d 350 ("We are to read the statute in its entirety and construe each part in connection with every other part to produce a harmonious whole."); *Bd. of Cnty. Comm'rs of Cnty. of Rio Arriba v. Bd. of Cnty. Comm'rs of Cnty. of Santa Fe*, 2020-NMCA-017, ¶ 13, 460 P.3d 36 (noting that the Legislature knows how to include or omit language if it so desires).

{11}     In sum, the Department has not persuaded us that the hearing officer's decision was not in accordance with the law. In evaluating whether Taxpayer "live[d] within the boundaries" of tribal land, the hearing officer followed a reasoned standard applied in other tax protest cases involving the same exemption and afforded great weight to whether Taxpayer had "a continuing physical presence" on tribal land. *See Morningstar Water Users Ass'n v. N.M. Pub. Util. Comm'n*, 1995-NMSC-062, ¶ 11, 120 N.M. 579, 904 P.2d 28 (stating that this court will accord some deference to an agency's interpretation of a governing statute). Viewing the evidence in the light most favorable to the agency decision, the hearing officer's ultimate conclusion that Taxpayer was, in fact, living within the boundaries of the Navajo Nation when she earned her income is supported by specific, unchallenged findings in the record. Accordingly, we decline to set aside the hearing officer's decision and order and affirm the hearing officer's conclusion that Taxpayer is entitled to the exemption in Section 7-2-5.5.

**CONCLUSION**

{12}     We affirm the administrative hearing officer's decision and order.

{13}     **IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JANE B. YOHALEM, Judge**